F I L E D
United States Court of Appeals
Tenth Circuit

NOV 25 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JERRY LAMAR WARNER,

    Defendant-Appellant.

No. 96-6299
(W. District of Oklahoma)
(D.C. No. CR-95-169-A)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, Chief Judge, **McKAY** and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Jerry Lamar Warner was convicted of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846, and distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). The Presentence Investigation Report ("PSR") calculated Warner's base offense level at 38, based on 2505 grams of cocaine base and one gram of marijuana, and recommended the district court apply a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). Following a sentencing hearing, the district court sentenced Warner to imprisonment for a term of 292 months on each count, to be served concurrently, and to five years of supervised release on each count, to run concurrently.

On appeal, Warner contends the district court erred by (1) admitting hearsay evidence in violation of the Federal Rules of Evidence; (2) applying a two-level enhancement for possession of a firearm; and (3) failing to make individualized factual findings as to the scope of Warner's participation in the conspiracy to justify the drug quantities assessed. This court affirms.

**A. Hearsay**

The government's second witness in its case-in-chief was Oklahoma City police officer Dennis Haskins, who testified, over Warner's objections, that (1) he had received information that six black males were involved in the distribution of crack cocaine from a particular residence; (2) a confidential informant made a controlled buy of crack cocaine at the residence; (3) the informant said he bought

the crack cocaine from "Pee Wee" (Warner's street name), who had a gun in his pocket; (4) the informant said he had observed guns at the residence on a prior date; and (5) the informant said he had observed additional quantities of crack cocaine inside the residence on prior visits.

Warner argues on appeal that (1) the officer's testimony constituted inadmissible hearsay;[1] (2) under Rule 403 of the Federal Rules of Evidence, the testimony's probative value was substantially outweighed by the danger of unfair prejudice;[2] and (3) admission of the testimony denied Warner his right to confrontation under the Sixth Amendment. We conclude the error, if any, from admitting the officer's testimony was harmless.

We review the district court's evidentiary rulings under an abuse of discretion standard, considering the record as a whole. *See United States v. Snow*, 82 F.3d 935, 940 (10th Cir. 1996). In the case of hearsay objections, our

---

[1]Warner also argues on appeal that the government utilized the officer's testimony during closing arguments, compounding the prejudice. Because the closing arguments were not transcribed, we have no record of the government's use of the testimony and thus do not consider the issue.

[2]It is questionable whether Warner properly objected at trial to the officer's testimony based on Rule 403 and/or Confrontation Clause grounds. Generally, if a particular evidentiary objection is not explicitly made at trial, we will not consider the issue on appeal unless it was plain error for the district court to fail to raise the issue sua sponte. *See United States v Orr*, 864 F.2d 1505, 1508 (10th Cir. 1988); *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc). Because we conclude, however, that any error from admitting the evidence was harmless, we need not address the sufficiency of Warner's objections at trial.

deference to the district court is heightened because the determination of what constitutes hearsay turns on the facts of the particular case. *See United States v. Wilson*, 107 F.3d 774, 780 (10th Cir. 1997); *Snow*, 82 F.3d at 940.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). This court has previously held that testimony offered for the limited purpose of explaining why an investigation was undertaken, rather than to prove the truth of the matter asserted, is not hearsay. *See, e.g.*, *Wilson*, 107 F.3d at 780-81; *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987).

In *Wilson*, the defendant, who was convicted of possession of cocaine with intent to distribute, challenged on hearsay grounds the admissibility of a police officer's testimony describing the events surrounding a controlled buy at the defendant's residence. *See Wilson*, 107 F.3d at 780-81. The court held the testimony was admissible to explain why the government began its investigation and to provide background for the officer's testimony. *See id.* at 781.

The similarities between the officer's testimony in *Wilson* and the officer's testimony in this case are readily apparent. Moreover, in this case, the district court gave two limiting instructions during the course of the officer's testimony, admonishing the jury to consider the testimony only as an explanation of what the

officers did to follow up on the information and not for the truth of the matter asserted.  Like the officer's testimony in *Wilson*, Officer Haskins's testimony was admissible to explain the background of the government's investigation and is therefore not considered hearsay.[3]  *See id.*; *Freeman*, 816 F.2d at 563.

The officer's testimony, however, must be evaluated for relevance under Rule 401 and for prejudice or confusion under Rule 403 of the Federal Rules of Evidence.  *See Freeman*, 816 F.2d at 563.  Some circuits, while acknowledging that out-of-court statements may be offered for the limited purpose of providing background information, have recognized that when such statements directly implicate the defendant, the statements may be inadmissible under Rule 403 due to their prejudicial effect.  *See United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir. 1990); *United States v. Mancillas*, 580 F.2d 1301, 1309-10 (7th Cir. 1978); *see also United States v. Gomez*, 529 F.2d 412, 416-17 (5th Cir. 1976).  In this case, although the officer's testimony was offered to explain the background of the investigation, the testimony also included an out-of-court statement naming

---

[3]Because we have determined the officer's testimony was not hearsay, Warner's argument that the admission of the testimony violated his rights under the Confrontation Clause of the Sixth Amendment is without merit.  *See United States v. Morales-Macias*, 855 F.2d 693, 695-96 (10th Cir. 1988) ("No additional analysis is required to hold that reception of the challenged statement is in conformity with the Sixth Amendment once we have determined, as has been done hereinabove, that it is not excludable as hearsay under the rules of evidence."); *Wilson*, 107 F.3d at 781.

Warner as the person from whom the informant purchased the crack cocaine. This court need not decide, however, whether the officer's testimony was inadmissible under Rule 403 because we conclude that any error from admitting the testimony was harmless.

In determining if a nonconstitutional error is harmless, "we must discern whether the statements, in light of the whole record, 'substantially influenced' the outcome of the trial, or whether we are left in 'grave doubt' as to whether it had such an effect." *United States v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995). In conducting a harmless error review, this court reviews the record de novo. *See id.*

The district court gave two limiting instructions during the course of the officer's testimony, informing the jury of the limited purpose of the testimony. Warner's drug activities were corroborated by three witnesses, all of whom the district court found to be credible. Viewing the record as a whole, this court is convinced the officer's testimony did not substantially influence the outcome of the trial. *See Martin*, 897 F.2d at 1372 (concluding admission of prejudicial evidence was harmless); *Mancillas*, 580 F.2d at 1310-11 (same); *Gomez*, 529 F.2d at 417 (same). Accordingly, the error, if any, from admitting the officer's testimony was harmless.

**B.  Firearm Enhancement**

Warner argues the district court erroneously enhanced his sentence pursuant to U.S.S.G. § 2D1.1(b)(1)[4] for possession of a firearm. The district court enhanced Warner's sentence based on its determination that codefendant Vernoil Cantley's possession of a firearm during the course of the conspiracy was reasonably foreseeable by Warner and thus attributable to Warner.[5] Warner specifically argues the foreseeability standard was not met and that vicarious liability extends only upward to those who control, not downward to those who obey.

We review the district court's finding of foreseeability under a clearly erroneous standard. *See United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991). An upward adjustment for possession of a weapon "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 application note 3. The Sentencing Guidelines permit courts "to attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the

---

[4]Section 2D1.1(b)(1) of the Sentencing Guidelines provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1).

[5]The PSR recommended enhancement based on Warner's personal possession of a firearm during the course of the conspiracy. At sentencing, the district court concluded that although there was evidence Warner possessed a firearm, there was insufficient evidence that he possessed it in connection with any specific offense.

defendant or reasonably foreseeable by him." *McFarlane*, 933 F.2d at 899 (citing U.S.S.G. §§ 2D1.1(b)(1), 1B1.3(a)(1)); *see also United States v. Underwood*, 982 F.2d 426, 428 (10th Cir. 1992). Furthermore, "'reasonable foreseeability of weapons possession by a codefendant may be inferred if the codefendant knowingly possessed the weapon.'" *Underwood*, 982 F.2d at 428 (quoting *United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir. 1991)).

Several witnesses, all of whom the district court found to be credible, testified that both Warner and Cantley possessed firearms during the time frame of the conspiracy. The government introduced into evidence a photograph of Warner and Cantley at a party together, in which Cantley was holding a gun. The district court found that Cantley was at least in joint possession of two firearms when he was arrested in a hotel room where crack cocaine was found. Given this evidence of Cantley's knowing possession of a firearm during the course of the conspiracy, we can infer that Cantley's possession was reasonably foreseeable to Warner. *See id.* at 428-29. As such, Warner is accountable for this conduct. *See id.* at 429. Therefore, we conclude the district court did not err by enhancing Warner's sentence for possession of a firearm.

**C. Drug Quantities**

Warner argues the district court failed to make individualized factual findings as to the scope of Warner's participation in the conspiracy and that

without such findings, the district court could not justify the drug quantities assessed.

"We review the district court's factual findings regarding the quantity of drugs for which a defendant is held responsible for clear error." *United States v. Hooks*, 65 F.3d 850, 854 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 797 (1996). "The rules for calculating . . . drug quantities in conspiracy cases are well established" in this circuit. *United States v. Ivy*, 83 F.3d 1266, 1289 (10th Cir.), *cert. denied*, 117 S. Ct. 253 (1996). The drug quantities attributable to a defendant are established not by looking at the drugs involved in the conspiracy as a whole, but rather by looking at the quantity of drugs the defendant reasonably foresaw or which fell within the scope of the defendant's agreement with the conspirators. *See id.; United States v. Roberts*, 14 F.3d 502, 522 (10th Cir. 1993). The government must prove the quantity of drugs by a preponderance of the evidence. *See Hooks*, 65 F.3d at 854. The district court may estimate the quantity provided the information underlying the estimate has a "minimum indicia of reliability." *United States v. Browning*, 61 F.3d 752, 754 (10th Cir. 1995).

The record indicates the district court considered each defendant's participation in the conspiracy and reasonably estimated the foreseeable quantity of drugs with respect to each defendant. In fact, Warner was held accountable only for those drug quantities where a witness directly implicated him in the sale.

Cantley, as head of the organization, was held accountable for approximately seven kilograms of cocaine base, whereas Warner was held accountable for only 2.5 kilograms of cocaine base. We therefore conclude the district court's drug quantity calculation was not clearly erroneous.

The judgment of the United States District Court for the Western District of Oklahoma is **AFFIRMED.**

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge